```
          IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF MARYLAND
                                    :
ANTHONY DAVIS
                                    :
   v.                               :  Civil Action No. DKC 2007-3396
                                    :
DIMENSIONS HEALTH CORPORATION
                                    :
```

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this sex and religious discrimination action is a motion for summary judgment filed by Defendant Dimensions Health Corporation ("Dimensions"). (Paper 12). The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, Defendant's motion will be granted.

**I. Background**

Plaintiff Anthony Davis, a Muslim male, was employed by Defendant Dimensions from January 23, 2006 until his termination on September 11, 2006. Dimensions is an integrated, not-for-profit healthcare system serving residents of Prince George's County, Maryland and the surrounding area. Plaintiff worked as a Respiratory Specialist at one of Dimension's member institutions called the Gladys Spellman Specialty Hospital ("GSSH"). Plaintiff's responsibilities included assessing patients' status and responding to signs of distress, setting up and monitoring all forms of oxygen therapy and ventilators using designated protocols, maintaining tracheotomy tube placement on patients, responding to

calls for immediate patient care services, and charting patients' progress.

Plaintiff alleges that he was harassed by several female health nurses while employed at GSSH. In addition, Plaintiff alleges that he was questioned on a few occasions when he would use his break time to go to his car and pray. According to Plaintiff, he created documents detailing the discriminatory treatment he faced from his co-workers. Plaintiff alleges that he was retaliated against for documenting his alleged mistreatment. Plaintiff was ultimately terminated after working at GSSH for nine months.

Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on September 30, 2006, and received a right to sue letter on September 25, 2007. Plaintiff, proceeding *pro se*, subsequently filed a three count complaint in this court on December 20, 2007, alleging: (1) sex discrimination in violation of Title VII, 42 U.S.C. § 2000e-2 *et seq.*; (2) religious discrimination in violation of Title VII; and (3) retaliation. Plaintiff seeks back pay, monetary damages of approximately $75,000, and punitive damages of $25,000. Defendant filed a motion for summary judgment on December 8, 2008. (Paper 12).

## II. Standard of Review

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of

law.  *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008).  In other words, if there clearly exists factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," summary judgment is inappropriate.  *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 250 (1986); *JKC Holding Co. LLC v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion.  *See Scott v. Harris*, 127 S.Ct. 1769, 1774 (2007); *Emmett,* 532 F.3d at 297.  A party who bears the burden of proof on a particular claim must factually support each element of his or her claim.  *Celotex Corp.*, 477 U.S. at 323.  "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial."  *Id*.  Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial.  *See Anderson*, 477 U.S. at 256; *Celotex Corp.*, 477 U.S. at 324.  "A mere scintilla of proof, however, will not suffice to prevent summary judgment."  *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003).  There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  *Anderson*, 477 U.S. at 249-50.

3

"If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id*. (citations omitted). Finally, courts generally should hold *pro se* pleadings "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972), *reh'g denied,* 405 U.S. 948 (1972).

**III. Analysis**

Defendant contends that it is entitled to summary judgment because Plaintiff cannot establish a *prima facie* case of sex discrimination, religious discrimination, or retaliation. Defendant further argues that even if Plaintiff could establish a *prima facie* case of these claims, the overwhelming evidence demonstrates that Defendant had legitimate, non-discriminatory reasons for terminating Plaintiff.

There are two methods for proving intentional discrimination in employment: (1) through direct or indirect evidence of intentional discrimination, or (2) through circumstantial evidence under the three-step, burden-shifting scheme set forth by the Supreme Court of the United States in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). Plaintiff has produced no direct evidence of discrimination. Therefore, he must proceed under the *McDonnell Douglas* burden-shifting framework. *See Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002).

4

Under the *McDonnell Douglas* framework, the plaintiff first must establish a *prima facie* case of discrimination. *See McDonnell Douglas Corp.*, 411 U.S. at 802. Once a plaintiff establishes a *prima facie* case, the burden of production shifts to the defendant to present a legitimate, nondiscriminatory reason for the adverse employment action alleged. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000)(citing *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). If the defendant succeeds in doing so, the presumption of discrimination raised by the plaintiff's *prima facie* case is rebutted. *See Stokes v. Westinghouse Savannah River Co.*, 206 F.3d 420, 429 (4th Cir. 2000)(citing *Burdine*, 450 U.S. at 255 n.10). The plaintiff then must "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Burdine*, 450 U.S. at 253. In the end, "[t]he plaintiff always bears the ultimate burden of proving that the employer intentionally discriminated against [him]." *Evans v. Tech. Applications & Serv. Co.*, 80 F.3d 954, 959 (4th Cir. 1996)(citing *Burdine*, 450 U.S. at 253).

    **A.   Sex Discrimination Claim**

Plaintiff alleges that he "was harassed by female nurses at Dimensions Health Corp." (Paper 1, at 2). Defendant argues that Plaintiff's allegation does not appear to give rise to a disparate treatment or discriminatory discharge claim. Rather, Defendant contends that Plaintiff's allegation is more closely akin to a

hostile work environment claim based on sex because Plaintiff contends that he was subject to persistent harassment because of his gender. In his opposition, Plaintiff does not refute Defendant's characterization of his claim. Therefore, Plaintiff's claim will be analyzed as a hostile work environment claim based on gender.[1]

To establish a hostile work environment claim based on gender, Plaintiff must show that: (1) the harassment was unwelcome; (2) the harassment was based on his gender; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer. *See Matvia v. Bald Head Island Mgmt.*, 259 F.3d 261, 266 (4th Cir. 2001).

First, Plaintiff contends that he informed several people at GSSH that the female nurses harassed him by questioning him about his whereabouts during breaks. Plaintiff voiced his complaints to Adrienne Walton, Director of Respiratory Care, Katherine Jones, the Director of Nursing, and Lovania Quaterman, Human Resources Representative. (Paper 14, at 1). Plaintiff asserts that he reported the harassment to Walton and Jones on three occasions. The fact that Plaintiff repeatedly complained to several individuals suggests that the conduct he faced was unwelcome.

---

[1] Similarly, Plaintiff's religious discrimination claim will be analyzed as a hostile work environment claim based on religion.

With respect to the second element, the conduct of which Plaintiff complains must be gender-based. *Ziskie v. Mineta*, 547 F.3d 220, 226 (4th Cir. 2008). "An employee is harassed or otherwise discriminated against 'because of' his or her gender if, 'but for' the employee's gender, he or she would not have been the victim of the discrimination." *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 242 (4th Cir. 2000). A plaintiff must show that he is "the individual target of open hostility because of [his] sex." *Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 331 (4th Cir. 2003)(citing *Smith*, 202 F.3d at 242-43).

Here, Plaintiff states that every time he returned from a break, the female nurses would harass him and question him as to his whereabouts. (Paper 12, Ex. 4, Plaintiff Dep., at 99). Plaintiff states that other nurses would go for lunch or on a break, yet would not face similar questioning. (*Id*.). However, Plaintiff has not presented any evidence that he was the target of hostility *because of his sex*. Plaintiff concedes that he never heard the female nurses make any comments in which they referenced his gender or made jokes directed towards men. (*Id*. at 182). In addition, Plaintiff states that he had never seen the female nurses harass any other male employees at GSSH. (*Id*. at 181-82). Plaintiff's bare allegations are insufficient to establish the second element of the *prima facie* case.

Third, Plaintiff must show that the conduct was "severe or pervasive" enough to create an abusive work environment. There are

7

"both subjective and objective components" to this element. *Ocheltree*, 335 F.3d at 333 (en banc)(citing *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21-22 (2006)). "The environment must be perceived by the victim as hostile or abusive, and that perception must be reasonable." *Ziskie*, 547 F.3d at 227. "[T]he objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.'" *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)(quoting *Harris*, 510 U.S. at 23). Such circumstances include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23. No single factor is determinative. *Id*. Determining whether conduct is so severe or pervasive as to establish a hostile work environment claim is not a "mathematically precise test." *Id.* at 22. Indeed, the "line between a merely unpleasant working environment . . . and a hostile or deeply repugnant one may be difficult to discern." *Hopkins v. Baltimore Gas & Elec. Co.*, 77 F.3d 745, 753 (4th Cir. 1996).

Here, it is undisputed that from his subjective point of view, Plaintiff believed that the treatment he experienced was severe, as evidenced by his complaints to management, Human Resources, as well as his subsequent charge of gender discrimination with the EEOC. However, the evidence presented does not support a conclusion that

it was objectively reasonable that the alleged harassment was sufficiently "severe or pervasive" as to alter the terms and conditions of his employment. *Id*. Plaintiff's only assertion of harassment based on sex is that the female nurses questioned him regarding his whereabouts when he returned from his break. As the Fourth Circuit recently noted, "[t]he task then on summary judgment is to identify situations that a reasonable jury might find to be so out of the ordinary as to meet the severe or pervasive criterion. That is, instances where the environment was pervaded with discriminatory conduct 'aimed to humiliate, ridicule, or intimidate,' thereby creating an abusive atmosphere." *E.E.O.C. v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 316 (4th Cir. 2008). Plaintiff may very well have felt annoyed or offended when the female nurses asked him about how he spent his time during breaks. However, Plaintiff's allegation fall short of the sufficiently pervasive or severe harassment required to establish a *prima facie* case of hostile work environment based on gender.

Finally, Plaintiff must show there is some basis for imposing liability on the employer, Defendant. Michael Jacobs, Vice President of Human Resources, submitted an affidavit stating that Defendant has a comprehensive grievance system that employees can utilize to submit complaints alleging discrimination. (Paper 12, Ex. 1, Jacobs Aff. ¶¶ 11-12.) Any established incidents of discrimination result in immediate disciplinary action, up to and including termination. (*Id*. at ¶ 12.) Jacobs states that

Plaintiff never filed a formal complaint or grievance alleging sex-based discrimination under the grievance and appeals procedures. Moreover, Plaintiff does not contend that he ever lodged such a formal complaint while employed at GSSH.  Plaintiff has no basis for imposing liability on Defendant in light of the fact that he never filed a complaint alerting Defendant of the alleged harassment that he experienced. *See Brown v. Perry*, 184 F.3d 388, 393 (4th Cir. 1999)(to impute liability on the employer, it must be shown that the employer had constructive or actual knowledge of the hostile environment and failed to take prompt or remedial action). Plaintiff fails to establish a *prima facie* case of hostile work environment based on gender.

**B.   Religious Discrimination Claim**

Plaintiff alleges that he was discriminated against on the basis of his religion because Walton allegedly questioned him a few times about "going out to [his] car on [his] break to pray in regards to religious beliefs."  (Paper 1, at 3).  In support of his claim, Plaintiff also points out that on one occasion, a few of the female nurses were talking about religion.  Plaintiff informed them that he did not feel comfortable discussing religious issues at work.

As previously explained, Plaintiff's claim will be analyzed as a hostile work environment claim based on religion.  The elements of a hostile work environment claim have already been set forth in the prior section.  Plaintiff's allegations are wholly insufficient

10

to establish this claim because Plaintiff has failed to show that any harassment he faced was based on his religion. Indeed, Plaintiff states that he did not know for sure whether Walton or other GSSH employees even knew whether he was a Muslim. (Paper 12, Ex. 4, Plaintiff Dep., at 120). In addition, Plaintiff states that Walton never told him that he could not go to his car and pray, nor was Plaintiff ever disciplined for praying during his break. (*Id*. at 137). Furthermore, Jacobs, Vice President of Human Resources, states that Plaintiff never filed a complaint pursuant to Defendant's grievance procedures alleging that he was discriminated against on the basis of religion. (Paper 12, Ex. 1, Jacobs Aff. ¶ 15). Because Plaintiff fails to establish a *prima facie* case, Defendant's motion for summary judgment will be granted with respect to Plaintiff's religious discrimination claim.

   **C. Retaliation Claim**

   **1. *Prima Facie* Case**

Although unclear, Plaintiff appears to allege that he was terminated in retaliation for "documenting" the alleged harassment he faced by some of the nurses at GSSH as well as for complaining to various individuals at GSSH. Defendant insists that the retaliation claim must fail because Plaintiff never engaged in protected activity. Namely, Defendant points out that Plaintiff never filed a complaint with anyone at GSSH alleging discrimination or harassment based on his sex or religion.

   To establish a claim of retaliation, Plaintiff must show that:

11

(1) he engaged in protected activity; (2) his employer took an adverse employment action against him; and (3) there was a causal connection between the protected activity and the adverse employment action. *See Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007). Plaintiff's burden to establish a *prima facie* case is "not onerous" but only requires that a plaintiff prove each element by a preponderance of the evidence. *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). If the plaintiff makes such a showing, the burden shifts to the employer to offer a non-discriminatory basis for the adverse employment action. *Matvia v. Bald Head Island*, 259 F.3d 261, 271 (4th Cir. 2001). The employee then has the opportunity to prove that the asserted reason is pretextual. *Id.; see also Smith,* 202 F.3d at 248 ("The *McDonnell Douglas* burden-shifting scheme applies in analyzing retaliation claims under Title VII.").

To satisfy the first element of retaliation, protected activity of an employee can take the form of either: (1) opposing a practice prohibited under Title VII (pursuant to the opposition clause); or (2) making a charge, testifying, assisting, or participating in an investigation, proceeding, or hearing under Title VII (pursuant to the participation clause). *Rachel-Smith v. FTDATA, Inc.*, 247 F.Supp.2d 734, 747 (D.Md. 2003). "Opposition activity encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory

activities." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998). A plaintiff in a Title VII retaliation case need "only prove that he opposed an unlawful employment practice which he reasonably believed had occurred or was occurring." *Peters v. Jenney*, 327 F.3d 307, 321 (4th Cir. 2003). The United States Court of Appeals for the Fourth Circuit explains that the inquiry is whether: (1) the plaintiff subjectively (in good faith) believed that the defendant engaged in an unlawful action; and (2) whether this belief was objectively reasonable in light of the facts. *Id*.

Plaintiff appears to allege that he engaged in protected activity when he complained about his alleged mistreatment to Walton, the Director of Respiratory Care, Jones, the Director of Nursing, and Quaterman, a Human Resources Representative. Plaintiff also alleges that he "documented" his mistreatment by putting his complaints in writing. Plaintiff does not provide copies of any such complaints. The only documents written by Plaintiff that are included in the record are two documents Plaintiff drafted in response to complaints made against him. (*See* Paper 12, Exs. G, R). However, neither of these documents allege discrimination on the basis of Plaintiff's sex or religion. Therefore, the court will focus only on Plaintiff's verbal complaints to Walton, Jones, and Quaterman. Looking at the facts in light most favorable to Plaintiff, the court assumes that

Plaintiff complained to these individuals that he was discriminated against on the basis of his sex and religion.

At the time Plaintiff complained to Walton, Jones, and Quaterman, he had not yet formally initiated a complaint or investigation against Defendant.  Plaintiff's activity can thus only be considered protected under the opposition clause, not under the participation clause of 42 U.S.C. § 2000e-(3)(a).  The next question is whether Plaintiff's complaints are protected as opposition to an unlawful practice.  In his opposition, Plaintiff asserts that he "addressed [his] issues to management regarding the negative treatment of harassment and intimidation from the nursing staff at (GSSH) in which all were females."  (Paper 14, at 1). Plaintiff likely had a subjective belief that Defendant engaged in unlawful activity, as demonstrated by his complaints to GSSH management and Human Resources personnel.  However, Plaintiff's belief that Defendant had engaged in discriminatory activity was not objectively reasonable.  Plaintiff concedes that none of the female nurses ever made remarks or jokes about men in particular or ever referenced Plaintiff's gender.  In addition, Plaintiff admits that to his knowledge, no other male employees at GSSH were ever harassed.  Furthermore, it is undisputed that no one made derogatory or discriminatory remarks about Plaintiff's religion.

Second, Plaintiff suffered an adverse action when he was terminated a mere nine months after he began his employment at GSSH.  The remaining question is whether Plaintiff can establish a

causal connection between his protected activity and the adverse employment action. Normally, very little evidence of a causal connection is required to establish a *prima facie* case. *Karpel v. Inova Health Sys. Servs.*, 134 F.3d 1222, 1229 (4th Cir. 1998). Here, Plaintiff does not specify when he was terminated in relation to when he voiced his complaints about his alleged mistreatment. The absence of this information is irrelevant, however, because Plaintiff's belief that Defendant engaged in unlawful activity was not objectively reasonable under the circumstances. Therefore, Plaintiff fails to establish a *prima facie* of retaliation.

**2. Legitimate, Non-Discriminatory Reasons**

Even if Plaintiff could establish a *prima facie* case, which he cannot, Defendant has presented legitimate, non-discriminatory reasons for Plaintiff's termination. Walton states that she began receiving complaints about Plaintiff's performance and conduct within the first month of Plaintiff's employment. (Paper 12, Ex. 2, Walton Aff. ¶ 16). Walton received a complaint from the daughter of a patient, who complained that Plaintiff had a "nasty" attitude and was unwilling to suction her father's mouth to remove secretions that had accumulated in her father's mouth. (*Id.* at ¶ 19). The daughter subsequently filed a grievance with GSSH complaining about Plaintiff's lack of concern and poor attitude regarding her father's care. (Paper 12, Ex. D). On another occasion, Plaintiff failed to remove the "cap" on another patient's

15

T-bar. Walton states that failing to remove the cap causes the Co2 levels in the patient's blood to increase, which can cause a loss of consciousness and possibly even death. (*Id.* at ¶ 31). Given the seriousness of this incident, Walton required that Plaintiff undergo mandatory training regarding respiratory competencies with a primary focus on ventilator care and equipment set-up. (Paper 12, Ex. I).

Walton also received numerous complaints from other employees at GSSH about Plaintiff's attitude and work ethic, including (1) Jones, the Director of Nursing, (2) Amy Paule, the Charge Nurse, (3) Wendy Toogood and Vannie Lee, respiratory therapists, and (4) Bethlehem Belai and Regbe Teklay, staff members at GSSH. Walton states that GSSH employees had informed her that Plaintiff would often go missing during work hours, on one occasion for as long as two hours. Subsequent to this incident, Walton issued Plaintiff a "notice of disciplinary action" for his "unauthorized absence from assigned place of work during regularly scheduled working hours." (*Id.* at ¶ 42). Walton further states that Lee had told her that he planned to resign to avoid working with Plaintiff because he felt threatened by Plaintiff's behavior and argumentative attitude. (*Id.* at ¶ 50). Defendant has presented legitimate, non-discriminatory reasons for Plaintiff's termination, and Plaintiff has failed to show any evidence of pretext.

**IV. Conclusion**

For the foregoing reasons, Defendant's motion for summary judgment will be granted.  A separate Order will follow.

```
                         _____/s/_____
                         DEBORAH K. CHASANOW
                         United States District Judge
```